ALFREDO L. FIGUEROA y OTRA, demandantes y recurridos, *v.* ALFONSO HERNÁNDEZ TORRES y OTROS, demandados y peticionarios.

*Número:* CE-94-619          *Resuelto:* 4 de noviembre de 1994

*José A. Silva Cofresí* y *José Luis Verdiales Morales,* abogados de la parte peticionaria; *Ronaldo Emmanuelli Jiménez,* abogado de la parte recurrida.

## RESOLUCIÓN

A la petición de *certiorari* presentada por la parte demandada peticionaria, *no ha lugar en esta etapa.*

*Regístrese, publíquese y notifíquese.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió un voto disidente. El Juez Asociado Señor Negrón García se inhibió.

(*Fdo.*) Francisco R. Agrait Lladó
Secretario General

— O —

Voto disidente emitido por el Juez Asociado Señor Rebollo López.

El pasado 9 de septiembre de 1994 —al *disentir* de la sentencia y actuación de la mayoría de los integrantes del Tribunal de no aplicar al caso entonces ante nuestra consideración la defensa de cosa juzgada en su modalidad de fraccionamiento de causa de acción; defensa levantada y fundada en el claro y terminante lenguaje de una *cláusula de relevo* que había sido acordada en la estipulación que le

puso fin a un pleito anterior entre las mismas partes— expresamos, en lo pertinente, que dicha acción mayoritaria tendría consecuencias trágicas y funestas en el campo de la litigación civil, ya que tendría el efecto indeseable de evitar las transacciones por razón de que ningún abogado responsable estaría en disposición de recomendarle a su cliente que transija un pleito a cambio del recibo de un relevo de la otra parte.

Hoy, aun cuando en la etapa de la expedición, o no, de un recurso, tampoco podemos permanecer callados. La mayoría, inexplicablemente, vuelve a cometer el *mismo error* al ignorar los términos, *claros y diáfanos*, de un "relevo" que firmara un empleado y/o accionista de una corporación dedicada al negocio de bienes raíces en Puerto Rico; documento mediante el cual dicho empleado o accionista, al cesar como tal, específicamente *relevó* a la referida corporación, y a sus demás accionistas, de *cualquier* obligación monetaria respecto a sueldos, comisiones, etc., que pudiera adeudársele.

I

El demandante recurrido Alfredo L. Figueroa comenzó a trabajar durante el año de 1977 para unas "empresas" controladas por el Sr. Alfonso Hernández Torres, percibiendo por ello —en adición a un salario y otros beneficios— comisiones en relación con las ventas de las propiedades de dichas empresas. En el año de 1982, la familia Hernández Torres incorporó "Alwita Realty & Management Corp.", corporación dedicada al negocio de bienes raíces, designándose al demandante Figueroa como "vice presidente ejecutivo" de dicha Corporación. Éste continuó trabajando ininterrumpidamente en dicha capacidad, no obstante la ocurrencia de varias disoluciones y fusiones corporativas,

hasta el 2 de octubre de 1992, cuando renunció a su puesto de vicepresidente ejecutivo en Empresas Inabón, Inc.

Al así hacerlo, Figueroa suscribió, *con fecha de 2 de octubre de 1992*, un documento titulado "Acuerdo de terminación de empleo y relevo de responsabilidad", *Exhibit* 2; en el cual documento, *en lo pertinente*, se expresó:

A. El Empleado [h]a sometido su renuncia a la posición que ocupa en la Compañía efectivo el 2 de octubre de 1992. La Compañía acepta la renuncia presentada por el Empleado *y las partes acuerdan que en consideración al Empleado firmar este Acuerdo y relevar a la Compañía de toda reclamación que pueda haber tenido o pueda tener en el presente o en el futuro*, la Compañía le proveerá al empleado los beneficios que aquí se detallan.

B. A tenor con las promesas, pagos y beneficios que se describen en este acuerdo, las partes otorgan este acuerdo a favor de y para el beneficio de ambas partes como sigue:

1. *La Compañía acuerda pagarle al Empleado la suma de $150,000.00.*

2. El Empleado continuará recibiendo los beneficios del plan médico y el seguro de vida hasta el 30 de septiembre de 1993.

3. El Empleado tiene derecho a adquirir el vehículo que tenía asignado y que es objeto de arrendamiento por la Compañía sin pronto pago. El Empleado continuará los pagos del mismo.

C.) Por la presente, *el Empleado releva, exonera, y descarga para siempre a la Compañía, sus oficiales, directores, accionista[s], agentes, empleados, matriz, subsidiarias o relacionadas, sucesores y cesionarios (aquí referidos colectivamente como los liberados), inclusive, pero sin limitarse, a cualesquiera derecho, causa de acción, reclamaciones o demandas que haya tenido, tenga o pueda tener en el pasado, presente o futuro contra la Compañía, incluyendo la fecha de firma de este acuerdo, incluyendo pero sin limitarse a cualquier asunto relacionado con la relación de empleo o la terminación de tal relación con la Compañía.*

1. El Empleado *reconoce haber recibido todos los beneficios y compensación adeudados* por sus servicios a la Compañía.

3. Este acuerdo es extensivo y aplicable a la Compañía, el Empleado y sus familiares directos y herederos, *y para ambas*

*partes a sus administradores, representantes, sucesores, oficia-*
*les, directores, agentes, empleados, accionista, afiliados y cual-*
*quier otra persona o entidad relacionados con la Compañía y el*
*Empleado.* (Énfasis suplido). *Exhibit* 2, págs. 1–2.

Ello no obstante, el recurrido Figueroa radicó una demanda, sobre cobro de dinero, ante la Sala de Ponce del Tribunal Superior de Puerto Rico el día 21 de octubre de 1993 contra Alfonso Hernández Torres, su esposa Doña Ramonita Ortiz y la sociedad de gananciales compuesta por ambos, Empresas Inabón, Inc. y Alfonso A. Hernández Ortiz, *en la cual reclamó el pago de una comisión que alegadamente se le adeudaba en relación con la venta de una propiedad realizada por la parte demandada en el mes de febrero de 1993.* La parte demandada solicitó del tribunal de instancia la emisión de una sentencia sumaria a su favor, fundada la misma en el "relevo" que voluntariamente había firmado el recurrido Figueroa. Dicha solicitud de sentencia sumaria fue declarada sin lugar.

Inconforme, *naturalmente*, la parte demandada acudió ante este Tribunal —vía *certiorari*— en revisión de la mencionada determinación judicial, imputándole al foro de instancia haber errado:

A. ... al no desestimar sumariamente la demanda instada por el Sr. Alfredo L. Figueroa, a pesar de este haber suscrito un acuerdo de terminación de empleo y relevo de responsabilidad el 2 de octubre de 1992. Dicho relevo constituye una transacción y dispone de la demanda del señor Figueroa.
B. ... al basar su denegatoria en evidencia extrínseca al relevo y evidencia sobre comunicaciones transaccionales posteriores al relevo, ello en violación a la Regla 69 y 22 de Evidencia, respectivamente. (Énfasis suprimido.) Petición de *certiorari*, pág. 6.

En el día de hoy, una mayoría de los integrantes del Tribunal *rehusa revisar* la denegatoria de dictar sentencia sumaria del tribunal de instancia. *Diferimos.*

## II

La Regla 36.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, ofrece un valioso instrumento procesal para que en situaciones apropiadas se dicte sentencia sin necesidad de una vista en su fondo. Su propósito es aligerar la tramitación de un caso, cuando de los documentos que se acompañan a la solicitud surge que *no* existe disputa sobre ningún *hecho esencial material* sino que lo que resta es aplicar el derecho. *Nassar Rizek v. Hernández*, 123 D.P.R. 360 (1989); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986). Dicho de otro modo, "[s]*i los hechos no están en controversia y el pleito sólo presenta una cuestión de derecho, está en orden disponer del asunto mediante sentencia sumaria*". (Énfasis suplido.) *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83, 86 (1987). Véase *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113 (1989). No obstante, "[e]*l sabio discernimiento es el principio rector para su uso, porque mal utilizada puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido procedimiento de ley. Es por esta razón que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos y que el residuo sea la aplicación del derecho*". (Énfasis suplido y en el original.) *Roig Comm. Bank v. Rosario Cirino*, 126 D.P.R. 613, 617–618 (1990). Véanse: *Consejo de Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991); *Padín v. Rossi*, 100 D.P.R. 259, 263 (1971); *Roth v. Lugo*, 87 D.P.R. 386, 392 (1963); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña*, San Juan, Pubs. J.T.S., 1985, Vol. II, Cap. V, pág. 182; *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992).

A los fines de considerar la moción para que se dicte sentencia sumariamente, se tendrán como ciertos todos los hechos no controvertidos que consten en los documentos y declaraciones juradas ofrecidas por la parte promovente. No obstante, tales documentos deben verse en la forma

más favorable a la parte que se opone a la moción. Como regla general, la parte opositora no podrá derrotar la moción si meramente descansa en sus alegaciones. Deberá presentar declaraciones juradas y documentos que controviertan los presentados por el promovente. *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992); *Corp. Presiding Bishop CJC of LDS v. Purcell*, ante, pág. 721. Finalmente, en el ejecicio de su sana discreción, el tribunal puede abstenerse de resolver sumariamente casos complejos o que envuelvan cuestiones de interés público. *Corp. Presiding Bishop CJC of LDS v. Purcell*, ante, pág. 723; *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 D.P.R. 945 (1993).

## III

A la luz de lo antes expuesto, resulta *obvio* que procede expedir el auto de *certiorari* solicitado y dictar sentencia revocatoria de la resolución del tribunal de instancia denegatoria de la solicitud de sentencia sumaria. *Sencillamente no hay hechos esenciales materiales en controversia.* El demandante recurrido, al oponerse a la solicitud de sentencia sumaria, se limitó a afirmar o aseverar que el relevo por él firmado fue únicamente en cuanto a los negocios de la corporación o compañía para la cual él trabajaba y que dicho relevo no cobija la deuda reclamada, por concepto de comisión, en la demanda que él radicara por razón de que la misma, en sus propias palabras, "es por concepto de *un negocio independiente y personal del demandante y los codemandados*, que no tenía que ver con su posición en las Empresas Inabón, Inc.". (Énfasis suplido.) Apéndice, pág. 112.

Olvida el demandante, *y la mayoría del los integrantes del Tribunal*, que el relevo que el demandante firmó incluye cualquier causa de acción —pasada, presente o futura— que él pudiera tener contra "la Compañía, sus oficiales, directores, accionistas, agentes, empleados" —*cuales*

*son, precisamente, los demandados recurrentes*— "incluyendo, *pero sin limitarse a*, cualquier asunto relacionado con la relación de empleo o la terminación de tal relación con la Compañía". (Énfasis suplido.) *Exhibit* 2, pág. 1.

En vista a lo anteriormente expresado, *no* hay razón alguna para que el foro de instancia pierda valioso tiempo —que puede dedicarle a otros casos— en la dilucidación de este asunto. Llana y sencillamente, y a la luz del relevo firmado por el recurrido Figueroa, éste *no* tiene derecho a recibir la comisión que reclama.